STATE v. SYLVESTER LAWHORN.

*Evidence—Declarations of Defendant—Rule in reference to Fragmentary Evidence—Judge's Charge.*

1. A defendant who avails himself of the privilege of testifying in his own behalf, may be asked on cross-examination whether he has been convicted of certain criminal offences, with a view to affect his standing as a witness.

2. And his declarations, pertinent to the issue, made in the hearing of a witness, are admissible against him. The rule excluding evidence, as being fragmentary, does not apply to such a case, but is confined to cases where proof is offered to show what a deceased person had said or testified to.

3. The law governing the defendant's right of self-defence was correctly stated by the court in charging the jury.

(*State* v. *Efler*, 85 N. C., 585; *State* v. *Patterson*, 2 Ired., 346; *State* v. *Garrett*, Busb., 357; *State* v. *Davidson*, 67 N. C., 119; *Buie* v. *Carver*, 73 N. C., 264; *Ingram* v. *Watkins*, 1 Dev. & Bat., 442, cited and approved).

INDICTMENT for assault and battery, removed from Lenoir county, and tried at Fall Term, 1882, of DUPLIN Superior Court, before *MacRae, J.*

The defendant is charged with an assault and battery with intent to kill, committed upon one Bryan.

As made by the evidence offered for the prosecution, the case is as follows: The parties accidentally met in the streets of Kins-

ton, the defendant being 'partially intoxicated. Upon learning who the defendant was, Bryan asked him how he had come out in his difficulty with one Cox, to which he replied by asking "what have you got to do with it? what is Cox to you?" Bryan told him that Cox was a friend of his, but that he had only inquired of him from a desire to know how their difficulty terminated. The defendant then began to curse Bryan, and upon his turning to leave, caught him by the shoulder and jerked him back, saying: "I want to know who in the hell you are, and what you've got to do with Cox?" and upon being answered as before, drew his pistol. Bryan said to him that he did not fear his pistol, but that he should avoid a difficulty as far as he could; whereupon the defendant accused him of having drawn a knife, but was assured that it was not so, and that he only had a small knife, with which he had been whittling. At the suggestion of a friend present, Bryan put up his knife, when the defendant began again to abuse him. A policeman come up, and learning what had transpired, laid his hand upon the defendant, and told him to consider himself under arrest. The defendant then said, "I don't intend to be imposed upon by any such d—d son-of-a-bitch," which Bryan said he could not stand, and struck the defendant, who immediately shoved him back, and shot him in the side with the pistol.

As made for the defendant, the case is as follows: The defendant passed two men in the street whom he did not know. After he had gotten some ten steps beyond them, he heard them talking low to themselves, and then one of them, who turned out to be Bryan, called to him so that he turned back. Bryan then said to him, "do you want to whip Cox," to which he replied, "no, whenever I get ready to whip any one I'll do so." Bryan then declared that Cox was his friend, drew a knife, and said he would use it on the defendant if he fooled with him, or said he wanted to whip Cox. The parties then quarreled and cursed each other, Bryan having his knife in his hand and the defendant having his hand on his pistol. The policeman interfered, caught hold

of the defendant and pushed him back, and told him to consider himself in arrest. He again cursed Bryan, and upon being stricken by him, shot him with the pistol. Defendant afterwards found that his coat had been cut with a knife. The defendant was examined as a witness in his own behalf, and upon his cross-examination was required to say, notwithstanding his objection, that he had been twice indicted for fighting and once for fornication and adultery; to which he excepted.

One Walters was examined, and testified that just before the difficulty between the parties occurred, he saw the defendant in conversation with two colored men, and, as he turned off from them to cross the street, heard him say that he "would shoot some d—d white-livered son-of-a-bitch before he slept." This was objected to by the defendant, but admitted as tending to show the reckless state of his mind; to which he excepted.

Amongst other instructions asked for the defendant, the court was requested to say to the jury that if they should believe that the defendant, when he was held by the policeman and assaulted by Bryan, had reasonable grounds to believe that Bryan had a knife, and apprehended death or great bodily harm, he had a right to use a pistol or other weapon necessary to his defence. This was refused, and the defendant excepted.

The court charged the jury that if the defendant first used language to the prosecutor calculated to provoke a breach of the peace, so that the prosecutor struck him, and he then shot the prosecutor, he would be guilty; that if the defendant called the prosecutor a d—d son-of-a-bitch, those words were such as were calculated to provoke a breach of the peace, whether the policeman had his hand on the defendant at the time he uttered them or not; that if Bryan was advancing on defendant without provocation and with a knife, and the defendant was in danger of being killed or of sustaining great bodily harm, and to save himself, he shot the prosecutor, he would not be guilty, but even in that case, if the defendant had first used words calculated to pro-

voke a blow, and did so, from the prosecutor, then the defendant ought to have retreated as far as he could with safety, and unless he did so, he would be guilty.

After verdict and judgment against the defendant, he appealed, assigning for errors the exceptions taken to the evidence, and the refusal of the court to charge as asked. Other exceptions were taken, but they were expressly waived by counsel in this court.

*Attorney-General,* for the State.
*Messrs. Strong & Smedes,* for defendant.

RUFFIN, J. There is no force in any of the exceptions taken for the defendant. By availing himself of the privilege of testifying in his own behalf, afforded him by the statute, he assumed the character of a witness and became subject to every rule adopted by the courts for the purpose of testing the credibility of witnesses. *State* v. *Efler,* 85 N. C., 585. In this state, it is well settled that a witness may be asked on cross-examination whether he has not been convicted of offences calculated to affect his standing as a witness. *State* v. *Patterson,* 2 Ired., 346; *State* v. *Garrett,* Busb., 357.

In *State* v. *Davidson,* 67 N. C., 119, it is said that the tendency of modern decisions is to allow almost any question to be put to a witness, and to require him to answer it, unless it should subject him to a criminal prosecution. The declarations of the defendant made in the hearing of the witness, Walters, were clearly admissible against him. Indeed it is hard to conceive of any case, whether criminal or civil, in which a party's own declarations pertinent to the issue could not be given in evidence against him. We know of no rule under which they could have been excluded, as being fragmentary in their nature. This circumstance might well affect their weight with the jury, and was, therefore, properly the subject of comment by counsel, but it furnished no ground for the exclusion of the testimony itself, it being otherwise clearly germane to the issue, as tending to show

the violent condition of the defendant's temper and disposition at the time. The case of *Buie* v. *Carver,* cited by counsel from 73 N. C., 264, is no authority in this case. That was a case in which a party undertook to show what a deceased witness had sworn on a former trial, and it was held that the witness was incompetent to do this, unless he was able to state the substance of all that was said by the deceased witness. But the rule seems to be confined to cases of that sort, and not even to extend to a case in which it is sought to impeach the testimony of a witness by showing contradictory statements made upon a previous examination in the cause.

In *Ingram* v. *Watkins,* 1 Dev. & Bat., 442, it was said that, on an indictment for perjury, it was not necessary that the prosecution should be able to prove all the evidence given by the defendant on the trial wherein he testified.

The law governing the defendant's right of self-defence was correctly laid down to the jury, and certainly with as much favor to him as he had any right to ask. In no case can a man be entirely innocent, who either provokes a fight or willingly engages in it; and it may well be questioned, therefore, whether it was not His Honor's duty to instruct the jury, that taking the defendant's evidence alone to be true, he was guilty of the offence charged against him.

There is no error in the jugment of the court below, and the same is, therefore, affirmed. Let this be certified, to the end that that court may proceed according to law in the premises.

No error. Affirmed.